## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY MEREDITH,** | ) | **Case No. 3:18-cv-105** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COUNTY OF JEFFERSON; JEFFERSON** | ) | |
| **COUNTY CHILDREN AND YOUTH** | ) | |
| **SERVICES; CYNTHIA CORNWELL;** | ) | |
| **JOANNA WELCH; BRANDY** | ) | |
| **SHRECKENGOST; ALLEN H. RYEN,** | ) | |
| **Ph.D.; NATALIE YOUNG;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Before the Court are two Motions to Dismiss Plaintiff's Amended Complaint. (ECF Nos.

17, 21.) Defendants County of Jefferson, Jefferson County Children and Youth Services (the

"Agency"), Cynthia Cornwell, Joanna Welch, Brandy Shreckengost, and Natalie Young

(collectively the "County Defendants") jointly filed one Motion to Dismiss.[1]  (ECF No. 17.)

Defendant Allen H. Ryen, Ph.D filed a separate Motion to Dismiss.  (ECF No. 21.)  These Motions

---

[1] Counsel for the County Defendants failed to comply with the Practices and Procedures of this Chambers. *See* Practices and Procedures of Judge Kim R. Gibson, https://www.pawd.uscourts.gov/sites/pawd/files/JG-Practices-Procedures.pdf. First, the County Defendants' brief exceeds the page limit. Section II(B) of Judge Gibson's Practices and Procedures provides that "briefs should not exceed 25 pages." The County Defendants filed a 50-page brief (ECF No. 18) without seeking leave of Court to file additional pages. Nevertheless, the Court considered the entirety of the County Defendants' brief when deciding the instant Motions. The County Defendants also filed a 51-page Motion to Dismiss (ECF No. 17), independent of its 50-page brief. The Court considered only the brief in support, not the contents of the Motion. Counsel is advised that a motion should contain a short statement of the relief sought and that the brief in support should contain legal argument. Second, the County Defendants filed a reply brief (ECF No. 26) without seeking leave of Court. Section II(B) of Judge Gibson's Practices and Procedures provides that "reply briefs . . . are not to be filed without leave of Court."

are fully briefed (*see* ECF Nos. 18, 24, 25, 26, 31) and are ripe for disposition. The Court held oral argument on Defendants' Motions on January 17, 2019. (*See* ECF No. 36.) For the reasons that follow, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## II. Background

Plaintiff alleges the following facts in her Amended Complaint (ECF No. 15), which the Court considers true for purposes of deciding the instant Motions.

### A. Plaintiff's Employment at Jeff Tech

From 2010 until September 26, 2016, Plaintiff Mary Meredith worked as a tenured math teacher at Jeff Tech—a public vocational and technical school in Jefferson County, Pennsylvania. (*Id.* ¶ 10.) Plaintiff possesses a Level II Teacher's Certification and is therefore eligible to teach high school math under Pennsylvania law. (*Id.*)

### B. Jeff Tech's Principal Files a Child-Abuse Complaint Against Plaintiff

On September 26, 2016, Jeff Tech's Principal, Melissa Mowery, called the Pennsylvania Child Abuse Hotline and reported Plaintiff for alleged child abuse. (*Id.* ¶ 11.) Plaintiff alleges that Mowery reported the child-abuse allegation based on a complaint from M.S.—the mother of A.C., a 17-year-old Jeff Tech student who Meredith allegedly abused. (*Id.* ¶ 12.)

On September 16, 2016, M.S. informed Mowery that she was withdrawing her son from Jeff Tech because of an incident involving her son, A.C., and Meredith in the school's hallway. (*Id.* ¶ 29.) This incident allegedly occurred on September 13, 2016. (*Id.* ¶ 31.) M.S. informed

Mowery that her son "had a diagnosis" after the incident. (*Id.* ¶ 29.) M.S. also informed Mowery that Meredith had previously filed a civil lawsuit against M.S. (*Id.* ¶¶ 29-30.)

Plaintiff describes the September 13, 2016 incident involving A.C. and Meredith as a "completely mundane exchange." (*Id.* ¶ 32.) Plaintiff alleges that A.C. went to his locker between classes in violation of school rules. (*Id.* ¶ 33.) Plaintiff and another math teacher informed A.C. that he was not permitted to access his locker between classes. (*Id.* ¶ 32.) This 40-second interaction was captured on the school's security cameras. (*Id.* ¶ 34.)

After this interaction, A.C. submitted a written complaint to Principal Mowery. (*Id.* ¶ 35.) When Mowery received A.C.'s complaint, she did not report Meredith for abuse. (*Id.* ¶ 36.) Rather, Mowery called the Pennsylvania Child Abuse Hotline three days later—on September 16, 2016—the date that M.S. contacted Mowery and stated that "her son had a diagnosis." (*Id.* ¶ 38.) Plaintiff notes that A.C. was hospitalized for a mental injury sometime in May of 2016, but that he was not diagnosed with a psychological condition as a result of that incident. (*Id.* ¶ 39.)

Plaintiff alleges that Mowery's report to the Pennsylvania Child Abuse Hotline "was nothing more than a rehash of an earlier report made by A.C.'s mother." (*Id.* ¶ 40.) Mowery did not provide any details about A.C.'s diagnosis. (*Id.*)

## C. Previous Issues Between Plaintiff, M.S., and A.C.

Plaintiff alleges that the September 2016 incident was not the first dispute between Plaintiff and M.S. Plaintiff alleges that M.S. had embarked on a months-long campaign to attack Meredith and "ruin her life." (*Id.* ¶¶ 48-49.)

In April of 2016, M.S. filed an abuse report against Meredith with the Agency. (*Id.* ¶ 49.) M.S. alleged that Meredith had inappropriately disciplined A.C. (*Id.*) The Agency "screened out"

M.S.'s abuse report and closed the case without thoroughly investigating M.S.'s allegations. (*Id.* ¶ 58.)

M.S. also reported Meredith to Jeff Tech administrators Mowery and Barry Fillman. (*Id.* ¶ 51.) M.S. accused Meredith of endangering A.C. and jeopardizing his safety. (*Id.*) Both Mowery and Fillman determined that M.S.'s allegations were baseless. (*Id.* ¶ 53.) Neither filed a report with the Agency, despite their obligation to report certain abuse allegations under Pennsylvania law. (*Id.* ¶ 55.) Mowery and Fillman did not take official action against Meredith after this incident. (*Id.* ¶¶ 54-59.) However, they did remove A.C. from Plaintiff's class "in the hopes that it would mollify M.S." (*Id.* ¶ 53.)

M.S. also reported Plaintiff to the police, the district attorney, and various school-board directors. (*Id.* ¶ 59.) None of these entities took official action against Plaintiff. (*Id.*)

In response to M.S.'s efforts, Plaintiff filed a defamation action against M.S. in the Court of Common Pleas of Clearfield County. (*Id.* ¶ 60.) Plaintiff alleges that Defendants improperly referenced Plaintiff's lawsuit against M.S. whenever Mowery and other Jeff Tech officials reported Plaintiff to the Pennsylvania Child Abuse Hotline in September of 2016. (*Id.* ¶¶ 60-63.)

### D. Plaintiff's Participation at the Punxsutawney School Board Meeting

Sometime in August of 2016, roughly three weeks before Plaintiff allegedly abused A.C. in the Jeff Tech hallway, Plaintiff made a presentation at a meeting of the Punxsutawney School Board. (*Id.* ¶ 42.) Punxsutawney is a "feeder school" for Jeff Tech, meaning that vocational students from the Punxsutawney School District take classes at Jeff Tech. (*Id.*) At the school-board meeting, Plaintiff publicly expressed concerns about the school's failure to address bullying and special-needs education. (*Id.* ¶ 43.) The local newspaper thoroughly covered Plaintiff's

-4-

appearance at the August 2016 school-board meeting. (*Id.* ¶ 44.) Plaintiff alleges that the Jeff Tech administration, including Mowery, strongly objected to Plaintiff's presentation at the school-board meeting, and that the administration issued a cease-and-desist letter voicing its displeasure. (*Id.* ¶ 45.)

## E. Defendants' Investigation of the September 2016 Child-Abuse Allegations Against Plaintiff

The report that Mowery filed against Plaintiff on the Pennsylvania Child Abuse Hotline reiterated the allegations from the April 2016 report that M.S. filed. (*Id.* ¶ 84.) The report also noted that Plaintiff had sued M.S. (*Id.*) Further, the report stated that Plaintiff stood in the school's hallway and stared at A.C. (*Id.*) Plaintiff alleges that "[t]here was no allegation of neglect or physical abuse [in the report], and no allegation that A.C. suffered from any 'psychological condition' as that term is defined by [Pennsylvania law]. In other words, there was not the slightest basis for even a prima facie case of child abuse." (*Id.*)

Plaintiff alleges that the Agency handled the September 2016 report against Plaintiff differently than the April 2016 report, despite similar allegations. (*Id.* ¶ 92.) Plaintiff alleges that Jeff Tech—whose administrators filed the September 2016 report—had a special relationship with the Agency that caused it to handle the later report differently. (*Id.* ¶¶ 92-96.) Namely, Plaintiff alleges that the Agency and Jeff Tech had a special relationship because the same attorneys acted as the solicitors for both Jeff Tech and the Agency. (*Id.* ¶¶ 93-94.)

### 1. Welch's Interview of M.S. and A.C.

The Agency began its investigation of the September 2016 report by sending Defendant Joanna Welch—an Agency caseworker—to interview M.S. and A.C. (*Id.* ¶ 97.) Plaintiff alleges

that Welch "brought up the subject of enuresis, or bed-wetting, out of the blue." (*Id.*) M.S. agreed that A.C. experienced bed-wetting, although this information previously had not been divulged to medical professionals. (*Id.* ¶ 99.) A.C. did not mention bed-wetting during either of his hospitalizations in the six months prior to September 2016. (*Id.* ¶ 100.) Moreover, A.C. had informed his primary care physician that he did not have urinary problems on September 15, 2016—two days before Welch interviewed A.C. (*Id.*)

Plaintiff alleges that Welch deliberately failed to investigate A.C.'s hospitalization for mental-health issues in May 2016. (*Id.* ¶ 104.) Plaintiff alleges that Welch did not seek more information on A.C.'s hospitalization because "[i]t would not serve to convict Meredith of child abuse, and in fact it would lead to the opposite conclusion." (*Id.* ¶ 106.) Rather, Plaintiff alleges that "[t]he records would have also demonstrated that Meredith had nothing to do with the one psychiatric hospitalization that A.C. had experienced, negating any suggestion that she caused or was responsible for a 'serious mental injury.'" (*Id.* ¶ 108.)

Plaintiff makes several other allegations regarding the impropriety of Welch's preliminary investigation of the complaint against her. Welch failed to inquire into other stressors in A.C.'s life that might have produced his mental-health symptoms. (*Id.* ¶ 115.) Welch also interviewed A.C. in the presence of his "crusading mother," which prevented A.C. from telling the truth. (*Id.* ¶¶ 116-17.)

### 2. Cornwell and Young Hire Dr. Ryen to Ensure an "Indicated Finding" of Child Abuse Against Plaintiff

Plaintiff alleges that Defendant Cynthia Cornwell—the Agency's Executive Director—and Defendant Natalie Young—an Agency casework supervisor—engaged a forensic expert to ensure

an "indicated finding" of child abuse against Plaintiff. (*Id.* ¶ 132.) Specifically, Plaintiff alleges that Cornwell and Young decided to engage a psychologist who they knew would falsely diagnose A.C. with a "serious mental injury." (*Id.* ¶¶ 134-35.)

Cornwell referred the abuse allegations to Defendant Dr. Allen Ryen. (*Id.* ¶ 136.) Dr. Ryen had a contract with the Agency to provide psychological services. (*Id.*) Plaintiff alleges that the Agency's decision to engage Dr. Ryen was "extraordinary" because other medical providers, including a mental-health counselor, did not diagnose A.C. with a "serious mental injury." (*Id.* ¶¶ 137-38.)

### 3. Dr. Ryen Diagnoses A.C. with a "Serious Mental Injury" in an Alleged Effort to Secure an Indicated Finding of Child Abuse Against Plaintiff

Plaintiff alleges that Cornwell and Young referred the case to Dr. Ryen because "it was understood that Ryen would support the Agency's illicit goal of tying Meredith with the indicated finding of abuse." (*Id.* ¶ 141.)

Dr. Ryen interviewed A.C. on November 11, 2016—56 days after Jeff Tech officials filed an abuse complaint against Meredith. (*Id.* ¶ 144.) Plaintiff alleges that the Agency did not provide Dr. Ryen with sufficient information to conduct a scientifically accurate examination of A.C. (*Id.* ¶¶ 145-46.) For instance, the Agency did not provide Dr. Ryen with a copy of the Jeff Tech security camera footage that showed the hallway encounter between Plaintiff and A.C. (*Id.* ¶ 146.)

Plaintiff alleges that Dr. Ryen's examination of A.C. was entirely deficient. (*Id.* ¶¶ 146-52.) Dr. Ryen allegedly regurgitated A.C.'s baseless and false charges in his report. (*Id.* ¶ 151.) And because the Agency did not provide Dr. Ryen with information about A.C. before the examination, Dr. Ryen had no way to assess A.C.'s credibility. (*Id.* ¶¶ 152-55.) For example, Dr.

Ryen accepted A.C.'s version of the encounter between Plaintiff and A.C. in the Jeff Tech Hallway because Dr. Ryen had never seen the video footage of the encounter and did not gather other evidence about the incident. (*Id.* ¶ 154.)

Dr. Ryen concluded that Plaintiff inflicted "emotional abuse" upon A.C. (*Id.* ¶ 159.) Plaintiff argues that rather than properly diagnosing a "psychological condition," as defined under Pennsylvania law, that Dr. Ryen "reached the legal conclusion that Meredith was guilty of emotional abuse . . . [because he] intended to harm Meredith." (*Id.* ¶¶ 159-61.)

Plaintiff alleges that Dr. Ryen's report became the sole justification for the Agency's indicated finding that Meredith committed child abuse. (*Id.* ¶ 161.)

### 4. Shreckengost Fails to Further Investigate Allegations Against Plaintiff

The Agency assigned the investigation of Plaintiff's case to Defendant Brandy Shreckengost—a novice caseworker who joined the Agency three months before Jeff Tech officials filed the September 2016 child-abuse complaint against Plaintiff. (*Id.* ¶ 162.)

On September 28, 2016, Shreckengost and Young spoke to Plaintiff's attorney. (*Id.* ¶ 164.) The pair rejected the attorney's request for Agency officials to interview Plaintiff and allow Plaintiff to present exculpatory evidence. (*Id.*) And despite a state regulation requiring the Agency to interview all eyewitnesses of suspected child abuse, Shreckengost refused to contact other teachers who witnessed the hallway incident. (*Id.* ¶ 166.)

Plaintiff further alleges that Shreckengost failed to adequately investigate the allegations against Plaintiff by:

(1)  Failing to acquire records from A.C.'s psychiatric hospitalization (*id.* ¶ 169);

(2)  Failing to provide Dr. Ryen with A.C.'s school records, medical information, and other collateral information (*id.* ¶ 170);

(3)  Failing to meet with Plaintiff before Dr. Ryen prepared his report (*id.* ¶ 171);

(4)  Allowing A.C.'s mother to speak for him at a meeting between Shreckengost, A.C., and M.S. (*id.* ¶ 172); and

(5)  Failing to interview or speak with Mowery until after Dr. Ryen issued his report (*id.* ¶ 173).

### 5.  The Agency and its Agents Fail to Seek Out Other Exculpatory Evidence

Plaintiff alleges that the Agency failed to seek out other pieces of exculpatory evidence or provide Plaintiff with the exculpatory evidence. First, Plaintiff alleges that although the Agency obtained A.C.'s medical records, the Agency never considered these records in determining whether Plaintiff caused A.C. to sustain a serious mental injury. (*Id.* ¶¶ 119-22.)

Second, Plaintiff alleges that the Agency failed to acknowledge that the encounter between A.C. and Plaintiff was captured on video and that it only lasted for 40 seconds. (*Id.* ¶ 123.) The Agency never inquired into whether the school's video cameras captured the incident. (*Id.* ¶ 125.)

Third, Plaintiff alleges that the Agency did not acquire the written statement that A.C. provided to Principal Mowery after the hallway incident occurred. (*Id.* ¶ 124.) Plaintiff alleges that Mowery failed to provide the Agency with the written statement. (*Id.*)

Finally, Plaintiff alleges that the Agency and the County Defendants failed to appreciate M.S.'s animosity towards Plaintiff. (*Id.* ¶¶ 126-31.) The County Defendants ignored the previous complaint that M.S. filed against Plaintiff, the civil lawsuit that Plaintiff filed against M.S., and that M.S. had lodged false complaints against Plaintiff in the past. (*Id.*)

**F.     The Outcome of the Agency's Investigation into Child-Abuse Allegations Against Plaintiff**

The Agency met with Plaintiff at approximately 4:00 p.m on the last day of the 60-day statutory period for the Agency to make its finding.[2]  (*Id.* ¶ 181.)  Plaintiff, Young, Schreckengost, Jefferson County Manager Shawn Sangstrom, and Jefferson County solicitor Ross Ferraro attended the meeting.  (*Id.* ¶ 182.)

Although the supposed purpose of this meeting was to allow Plaintiff to defend herself, Plaintiff alleges that she did not have a meaningful opportunity to be heard.  (*Id.* ¶¶ 176-189.)  At the meeting, Plaintiff requested information on the charges against her.  (*Id.* ¶¶ 179-80, 183.)  Shreckengost told Plaintiff that she could not provide Plaintiff with the allegations against her because the charges were confidential under Agency policy.  (*Id.* ¶ 183.)

After this allegedly flawed hearing, the Agency rendered an "indicated finding of abuse" against Plaintiff.  (*Id.* ¶ 188.)  The Agency advised Jeff Tech administrators of the indicated finding against Plaintiff and Jeff Tech promptly terminated her employment.  (*Id.* ¶ 189.)

**G.     The Pennsylvania Department of Human Services Bureau of Hearings and Appeals Reverses the Agency's Determination**

Plaintiff appealed the Agency's indicated finding of child abuse to Pennsylvania's Department of Human Services Bureau of Hearings and Appeals ("BHA").  (*Id.* ¶ 27; ECF No. 15-1.)  Plaintiff sought to have the indicated finding of child abuse "expunged."  23 PA. CONS. STAT. § 6303(a); (ECF No. 15-1 at 35.)[3]  In May and June of 2017, the BHA held a five-day administrative

---

[2] The Amended Complaint does not provide the date of this meeting.
[3] Under 23 PA. CONS. STAT. § 6303(a), "expunge" is defined as "[t]o strike out or obliterate entirely so that the expunged information may not be stored, identified, or later recovered by any mechanical means or otherwise."  (ECF No. 15-1 at 35.)

hearing before Administrative Law Judge Emily DeVoe (the "ALJ"). (*Id.* at 3-4.) Both Plaintiff and the Agency submitted briefs to the BHA after the hearing. (*Id.* at 3.)

In a written opinion, the ALJ made extensive findings of fact. (*See id.* at 8-33.) The ALJ sustained Plaintiff's appeal on multiple grounds. First, the ALJ found that "[b]ecause Dr. Ryen failed to diagnose the subject child with a psychological condition, there is no evidence that the subject child suffered a 'serious mental injury' as defined by the CSPL." (*Id.* at 43.) Second, the ALJ found that the Agency failed to present evidence showing that A.C. suffered serious mental injury. (*Id.* at 47.) Third, the ALJ found that the Agency "failed to present substantial evidence that [Plaintiff] caused or substantially contributed to any serious mental injury the subject child may have suffered." (*Id.* at 50.) Finally, the ALJ found that the Agency did not present sufficient evidence that Plaintiff committed child abuse. (*Id.* at 56.) The BHA overturned the Agency's determination and expunged the Agency's indicated finding of abuse from Plaintiff's record. (*Id.* at 56.) The Agency did not appeal the BHA decision. (ECF No. 15 ¶ 27.)

### H.    Procedural History

Plaintiff filed a Complaint against Defendants in this Court on May 18, 2018. (*See* ECF No. 1.) Plaintiff filed an Amended Complaint (ECF No. 15) after Defendants moved to dismiss Plaintiff's Complaint. (ECF Nos. 7, 8, 10.)

Plaintiff's Amended Complaint contains five counts:

(1)    a claim under 42 U.S.C. § 1983 alleging a violation of the Equal Protection Clause of the Fourteenth Amendment (ECF No. 15 ¶¶ 213-31);

(2)    a § 1983 claim alleging that Defendants deprived Plaintiff of procedural due process under the Fourteenth Amendment (*id.* ¶¶ 232253);

(3)    a § 1983 claim alleging a First Amendment violation (*id.* ¶¶ 254-62);

(4)     a § 1983 claim alleging a violation of Plaintiff's right to substantive due process under the Fourteenth Amendment (*id.* ¶¶ 263-74); and

(5)     a common-law negligence claim against Dr. Ryen under Pennsylvania law (*id.* ¶¶ 275-99.)

Defendants subsequently filed Motions to Dismiss Plaintiff's Amended Complaint. (ECF No. 17, 21.) The County Defendants and Dr. Ryen filed separate Motions to Dismiss. (*Id.*) The Court held oral argument on Defendants' Motions on January 17, 2019. (ECF No. 36.)

## III.     Jurisdiction

As discussed at length in Sections IV and V, the parties dispute whether the Court has jurisdiction over this matter. Both the County Defendants and Dr. Ryen argue that the Court does not have jurisdiction over Plaintiff's claims because Defendants are entitled to qualified immunity. (ECF No. 18 at 14-18; ECF No. 21 at 21-25.)

In Plaintiff's Amended Complaint, she alleges the Court has jurisdiction over her claims under 28 U.S.C. § 1331 and §1343 because she brings claims under 42 U.S.C. § 1983. (ECF No. 15 ¶ 1.) She further alleges that that the Court has supplemental jurisdiction over her state-law claims under 28 U.S.C. § 1367(a). (*Id.*)

## IV.     Standard of Review

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs a challenge to a court's subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss addresses "the very power [of the court] to hear the case." *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Frisell v. Grier Sch.*, No. 3-14-cv-13, 2015 U.S. Dist. LEXIS 10390 (W.D. Pa. Jan. 29, 2015). "As the party asserting

jurisdiction, [the plaintiff] bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks. "A facial attack challenges the sufficiency of the pleadings, and the Court must accept the Plaintiff's allegations as true." *Stuler v. IRS*, No. 2:12-cv-0391, 2012 WL 1893579, at *1 (W.D. Pa. May 24, 2012) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). On the other hand, "[i]n a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, . . . limited evidentiary hearings" and other matters outside the four corners of the complaint. *Id.* (citing *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)); *see also Long v. Tommy Hilfiger USA, Inc.* No 2:09-cv-1701, 2011 WL 635271, at *2 (W.D. Pa. Feb. 11, 2011).

### B. Rule 12(b)(6)

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id*. The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[4] First, the court must "tak[e] note of the elements

---

[4] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809

[the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## V.    Discussion

### A.    The Court Will Deny Defendants' Motions to Dismiss Under Rule 12(b)(1) because the Eleventh Amendment Does Not Bar Suit Against Defendants

The Eleventh Amendment of the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. amend. XI.

The Eleventh Amendment has been generally interpreted "to immunize an unconsenting state from suits brought in federal courts by her own citizens as well as by citizens of another state." *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) (quoting *Pennhurst State*

F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (2010)).

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "A suit that is brought against an entity that is in essence an 'arm of the state' is similarly barred by the Eleventh Amendment." *Lang v. Pa. Higher Educ. Assistance Auth.*, 610 F. App'x 158, 160 (3d Cir. 2015) (quoting *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989)).

Both the County Defendants and Dr. Ryen argue that the Eleventh Amendment precludes this Court from exercising jurisdiction over Plaintiff's claims. (ECF No. 18 at 14-18; ECF No. 21 at 20-22.) The County Defendants argue that county level children and youth services agencies— like the Agency here—are arms of the state because they are part of Pennsylvania's "unified judicial system" and are therefore immune to suit under the Eleventh Amendment. (ECF No. 18 at 15.) The County Defendants also argue that Plaintiff's claims against the County Defendants in their official capacities must be dismissed. (*Id.* at 16-18.) Dr. Ryen argues that he "is afforded protection under the Eleventh Amendment because he was allegedly acting under the color of state law."[5] (ECF No. 21 at 21-22.)

In response, Plaintiff argues that Defendants are not entitled to Eleventh-Amendment immunity for three reasons. (ECF No. 24 at 16-19; ECF No. 25 at 12.) First, Plaintiff argues that the Eleventh Amendment applies only to state-government officials, and not county government

---

[5] The Court will not fully consider this argument because it clearly defies the plain language of Section 1983. The most basic requirement to hold a defendant liable under Section 1983 is that the defendant "acted under the color of state law." Section 1983 applies to "every person who [acts] under color of any statute ordinance, regulation, custom or usage." Dr. Ryen appreciates this in his brief where he states that "to state a viable § 1983 civil rights claim, such as what has been asserted by Plaintiff in this action, the plaintiff must plead that the defendants, *acting under color of state law*, deprived her of a right secured by the Constitution or laws of the United States." (ECF No. 21 at 21.) Then, in the next paragraph, Dr. Ryen argues that he is "afforded protection under the Eleventh Amendment *because* he was allegedly acting under color of state law." (*Id.* at 22.) Therefore, this argument is clearly unpersuasive because Dr. Ryen must have been acting under color of state law to be held liable under Section 1983. Section 1983 would have no force if it did not apply to individuals acting under color of state law.

-15-

officials like the County Defendants. (ECF No. 24 at 16-18.) Second, Plaintiff argues that raising

Eleventh-Amendment immunity in a Rule 12(b)(1) motion is improper because immunity is an

affirmative defense.[6] (*Id.* at 17.) Third, Plaintiff argues that the County Defendants' arguments

fail because they did not apply the Third Circuit's three-prong test to determine if an entity is an

arm of the state under the Eleventh Amendment. (*Id.* at 18.) The Court will address the parties'

cogent arguments in the following subsections.

### 1. The Court will Dismiss Plaintiff's Official-Capacity Claims Against Cornwell, Shreckengost, Welch, and Young

In her Amended Complaint, Plaintiff asserts claims against Cornwell, Shreckengost,

Welch, and Young in both their individual and official capacities. (ECF No. 15 ¶¶ 5-8.) The

County Defendants therefore move to dismiss the official-capacity claims against them.

In *Hafer v. Melo*, the Supreme Court addressed whether state officers may be held liable

for damages under § 1983 based on actions taken in their official capacities. *Hafer v. Melo*, 502

U.S. 21, 24 (1991). There, the Supreme Court distinguished cases under § 1983 that turned on

whether the defendants were acting in their individual or official capacities. *Id.*

---

[6] The Court will not fully address this argument because it is well-established that a motion under Rule 12(b)(1) is the proper vehicle to raise Eleventh-Amendment immunity. Rule 12 provides that a party may present a defense for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject-matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.* 77 F.3d 690, 692 (3d Cir. 1996) (citing *Pennhurst*, 465 U.S. at 98-100); *see also Mayercheck v. Tucciarone*, No. 14-611, 2015 WL 1000159, at *3 (W.D. Pa. Mar. 5, 2015) ("A Rule 12(b)(1) motion is the proper vehicle for asserting Eleventh Amendment immunity because the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject-matter jurisdiction."); *Nelson v. Pa. Dep't of Pub. Welfare*, 244 F. Supp. 2d 382, 392 (E.D. Pa. 2002) ("Those claims that are barred by the Eleventh Amendment must be dismissed under Rule 12(b)(1) because the federal courts lack jurisdiction to hear them.").

The Supreme Court noted two conflicting decisions—*Graham* and *Will*. *Id*. In *Graham*, the Court held that suits against state officials in their official capacity should generally be treated as suits against the state. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The *Graham* Court held that because official-capacity suits are essentially brought against the state itself, the state entity's policy or custom must have played a part in the violation of federal law. *Id*. (quoting *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, according to *Graham*, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id*. at 167.

In *Will*, on the other hand, the Court held that state officials who are sued for monetary damages under § 1983 are not "persons" who can be sued under § 1983.[7] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65 (1989). The *Will* Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id*. The *Hafer* Court sought to eliminate the ambiguity that *Graham* and *Will* created. *Hafer*, 502 U.S. at 27.

The *Hafer* Court held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and that "[t]he Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Id*. at 31. Therefore, *Hafer* does not disturb the holding in *Graham*,

---

[7] Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities security by the Constitution and law, shall be liable to the party injured.

42 U.S.C. § 1983.

which allows plaintiffs to bring official-capacity suits so long as they allege a custom or policy that led to the violation of the plaintiff's rights under *Monell*.

Here, Plaintiff asserts claims against Cornwell, Shreckengost, Welch, and Young in both their individual and official capacities. Plaintiff alleges that it was the Agency's policy, custom, and practice to violate constitutional rights in a count of her Amended Complaint. (ECF No. 15 ¶ 239 ("It was the policy, custom, or practice of the Agency, as we have detailed, to deny subjects of abuse allegations detailed charges explaining the basis for the Agency . . . adjudication.").)

Accordingly, because Plaintiff alleges violations under *Monell*, Plaintiff's official-capacity claims are permissible according to *Hafer*. But any other official-capacity claims against Cornwell, Shreckengost, Welch, and Young must be dismissed because Plaintiff does not allege a violation under *Monell*.

Nonetheless, Plaintiff's official-capacity claims against Cornwell, Shreckengost, Welch, and Young are redundant of her claims against the Agency. Plaintiff brings claims against the Agency and these four Agency employees in both their individual and official capacities. "[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office" and "[a]s such it is no different from a suit against the [governmental entity] itself." *Will*, 491 U.S. at 71.

Based on this reasoning, courts have discretion to dismiss official-capacity *Monell* claims against individual government officials whenever the same claim is brought against the governmental entity itself. *Snell v. City of York*, No. 4:06-cv-2133, 2007 WL 1412061, at *2 (M.D. Pa. May 10, 2007), *aff'd* 564 F.3d 659 (3d Cir. 2009) ("Courts within the Third Circuit have ruled that claims against an official in his or her official capacity are redundant with the claims against a

municipality that employs the official, and should therefore be dismissed."); *accord Snatchko v. Peters Twp.*, No. 2:12-cv-1179, 2012 WL 6761369, at *11 (W.D. Pa. Dec. 28, 2012); *Taylor v. Pilewski*, No. 08-cv-611, 2008 WL 4861446, at *2 (W.D. Pa. Nov. 7, 2008); *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 419 (M.D. Pa. 2014).

Here, the Court finds that Plaintiff's official-capacity claims are redundant of her claims against the Agency. Therefore, the Court will **DISMISS** Plaintiff's official-capacity claims against Cornwell, Shreckengost, Welch, and Young.

### 2. The Agency is not an Arm of the State for Eleventh Amendment Purposes; Therefore the Agency and its Officials are not Entitled to Eleventh-Amendment Immunity

The Eleventh Amendment bars suit against the Agency and its officials only if the Agency is "an arm of the state" for Eleventh-Amendment purposes. *See* U.S. CONST. amend. XI.; *Lang* 610 F. App'x at 160; *Fitchik*, 873 F.2d at 658. Here, the Court finds that the Agency is not an arm of the Commonwealth, and therefore that the Eleventh Amendment does not bar suit against it or its officials.

The Third Circuit has identified a three-prong test to determine whether a government entity is an arm of the state and immune to suit under the Eleventh Amendment. Courts must evaluate "(1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has." *Fitchik*, 873 F.2d at 659; *Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999); *Christy*, 54 F.3d at 1144-45; *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1350-52 (3d Cir. 1994). The Court will analyze these factors in turn.

### a. There Is No Evidence that Payment of a Judgment Against the Agency would Come from the Commonwealth's Treasury

The "funding subfactor" weighs in favor of a governmental entity's Eleventh-Amendment immunity when the state treasury is responsible for the payment of a judgment.[8] *Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 951 (3d Cir. 2019) (quoting *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 233 (3d Cir. 2006)). This inquiry focuses on whether the state is statutorily obligated to pay a judgment against the Agency. *Id.*

The Third Circuit has provided a three-part test to assess the funding subfactor. The Court must consider: (1) a state's legal obligation to pay a money judgment entered against the entity; (2) whether the agency has the money to satisfy the judgment; and (3) whether there are specific statutory provisions that immunize the state from liability for money judgments. *Id.* at 950-51 (citing *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016)).

First, there is no evidence that the Commonwealth is legally obligated to satisfy a judgment against the County or the Agency. If a state is not legally required to indemnify an entity, sovereign immunity for that entity is disfavored—even if the state later decides to indemnify the entity. *Id.* (citing *Maliandi*, 845 F.3d at 87) (holding that Pennsylvania law does not require the state to indemnify the Pennsylvania Liquor Control Board although the state may voluntarily choose to indemnify it, which disfavors sovereign immunity). In other words, this inquiry disfavors sovereign immunity if a statute does not require the state to satisfy a judgment against the Agency. "[T]he question of legal liability [is] paramount." *Maliandi*, 845 F.3d at 88.

---

[8] The Court uses the term "Commonwealth" and "state" interchangeably throughout this opinion.

"[T]he practical reality that the State foots the bill for a money judgment" is not the focus of the inquiry into the state's obligation to satisfy a judgment. *Id.* at 86-87 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007)). Rather, courts only consider these practical considerations where "Congress has put a proverbial 'gun to the head' of the state to sustain the entity even without a legal obligation." *Id.* at 87 n.7 (citing *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993)).

Here, there is no statute that requires the Commonwealth to satisfy a judgment against the Agency. *See* County Code, 16 PA. CONS. STAT. §§ 101-13213. While county commissioners may apply to borrow money from the Commonwealth when county funds are exhausted, there is no statute indicating that the state is legally responsible for satisfying judgments against the Agency. Further, there is no indication that Congress requires the state to sustain children and youth services agencies.[9] This prong of the funding inquiry therefore weighs against granting immunity to the Agency.

Second, it is unclear whether the Agency has adequate funds to satisfy a monetary judgment against it. "The second subfactor under the funding inquiry" looks to "whether the agency has the money to satisfy the judgment [through] sources of funding aside from state appropriations." *Fitchik*, 873 F.2d at 662; *Maliandi*, 845 F.3d 77 at 88. Courts must also consider

---

[9] The Court notes that Congress passed the Child Abuse Prevention and Treatment Act in 1974 and subsequently amended and reauthorized that Act. *See* 42 U.S.C. §§ 5101-5119. While this Act provides for federal grants to assist states in administering child-welfare programs, it does not require states to maintain children and youth services agencies. *Id.*

the degree of control the entity has over state-provided funds once they are given to the entity. *Id.*

The record in front of the Court does not clearly establish the Agency's sources of funding. However, it appears that a portion of the Agency's funding comes from the Commonwealth. *See* PA. DEP'T OF HEALTH & HUMAN SERVS. OFFICE OF CHILDREN, YOUTH & FAMILIES, TITLE IV-B CHILD & FAMILY SERVICE PLAN FEDERAL FISCAL YEARS 2015-2019 (2014) (describing the distribution of state funds to county children and youth services agencies).[10] But it also appears that Jefferson County and the Agency have significant control over state-granted funds. *See* 16 PA. CONS. STAT. § 1701 ("The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties."). The underdeveloped factual record before the Court on this subfactor does not favor or disfavor immunity.

Third, courts must look to "whether the state has immunized itself from the entity's debts." *Fitchik*, 873 F.2d at 659; *Patterson*, 915 F.3d at 952. There is no specific provision in the County Code that immunizes the state from the County or the Agency's debts. 16 PA. CONS. STAT. §§ 101-13213. Therefore, because the Commonwealth has not immunized itself against county debts, this subfactor appears to favor granting immunity to the Agency. *Patterson*, 915 F.3d at 952; *Maliandi*, 845 F.3d at 90.

In sum, the funding subfactors indicate that the Agency is not entitled to Eleventh-Amendment immunity. Even though the Commonwealth may be practically responsible for a judgment against the Agency to some extent, the Commonwealth is not legally obligated to satisfy

---

[10] Available at http://www.dhs.pa.gov/cs/groups/webcontent/documents/document/c_149645.pdf.

a judgment against the Agency—which is paramount to this inquiry. The Court finds that the second and third factors do not weigh strongly enough in favor of immunity to alter this conclusion.

> **b.   The Agency's Status Under State Law Does not Entitle it to Eleventh-Amendment Immunity**

The Court must analyze four subfactors to assess the Agency's legal status under state law: (1) how state law generally treats the Agency; (2) whether the Agency can sue or be sued in its own right; (3) whether the Agency is separately incorporated; and (4) whether it is immune from state taxation. *Febres*, 445 F.3d at 230; *Carter*, 181 F.3d at 347 n.22; *Fitchik*, 873 F.2d at 662-63.

First, the critical question is whether Pennsylvania law treats the Agency as an arm of the county or as an arm of the state. The Court finds that Pennsylvania law treats the Agency as an arm of the county, not as an arm of the state. The Agency is entitled to Eleventh Amendment immunity if it is an arm of the state. On the other hand, the Agency is not entitled to immunity if it is an arm of the county.

As a preliminary matter, courts treat counties and county agencies as independent entities for Eleventh-Amendment purposes, rather than as arms of the state. "The Supreme Court has long held that counties, municipalities, and political subdivisions of a state are not protected by the Eleventh Amendment." *Febres*, 445 F.3d at 229; *Lincoln Cty. v. Luning*, 429 U.S. 274, 280 (1977); *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Bolden v. SEPTA*, 953 F.2d 807, 814 (3d Cir. 1991); *N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189 (2006).

And it appears that Pennsylvania law treats the Agency as an arm of the county, not an arm of the state. Pennsylvania law provides that:

[t]he county commissioners of any county of the fourth, fifth, sixth, seventh, or eighth class shall have the power and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services designed to keep children in their own homes, prevent neglect, abuse and exploitation, [and to] help overcome problems that result in dependency, neglect or delinquency.

16 PA. CONS. STAT. § 2168.

Section 2168 applies to the Jefferson County Commissioners. Pennsylvania law classifies counties according to population. *See* 16 PA. CONS. STAT. § 210. Jefferson County is a sixth-class county because it has a population of between 45,000 and 89,999. *See* CTY. COMM'R ASSOC. OF PA., COUNTIES BY CLASS (2019), https://www.pacounties.org/PAsCounties/Pages/Counties-by-Class.aspx.[11] Accordingly, state law requires Jefferson County to establish the Agency to fulfill the purpose of Section 2168.[12]

Pennsylvania law requires counties to establish agencies to promote the welfare of children and to prevent child abuse. 23 PA. CONS. STAT. §§ 6301-86. This statutory scheme generally sets out counties' responsibilities, but leaves the governance and administration of

---

[11] *See also* ADMIN. OFFICE OF PA. COURTS, COUNTY CLASSES (2019), http://www.pacourts.us/news-and-statistics/research-and-statistics/dashboard-table-of-contents/resources/WebHelp/General_Information/County_Class.htm.

[12] Courts have not found that local-government agencies are arms of the state merely because there is a state statute providing for their existence. *Camden Cty. Bd. of Educ.*, 262 F. Supp. 2d 446 (D. N.J. 2003). In *Camden Cty. Bd. of Educ.*, the Court found that a city school district was not an arm of the state despite a New Jersey Constitutional provision mandating state-provided public education. *Id.* at 449. Here, 62 PA. CONS. STAT. § 2305 provides that "[t]he local authorities of any institution shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services designed to keep children in their own home, prevent neglect, abuse and exploitation." However, like in *Camden Cty. Bd. of Educ.*, the Agency is not an arm of the state merely because Section 2305 broadly provides for its existence. In other words, the Agency is not a "legislatively ordained municipal corporation" like the Pennsylvania Turnpike Commission or Human Relations Commission. *Pa. Human Relations Comm'n v. USAir, Inc.*, 615 F. Supp. 75, 78 (W.D. Pa. 1985) (citing *Gerr v. Emrick*, 283 F.2d 293, 296 (3d Cir. 1960)).

-24-

child-welfare programs to the discretion of the individual counties and their officials. 23 PA. CONS. STAT. §§ 6331-42, 6361-72.

Similarly, 62 PA. CONS. STAT. Section 2305 establishes the "[p]owers and duties of local authorities as to children." This section of laws is entitled "County Institution District Law." *See* 62 PA. CONS. STAT. §§ 2201-2391. Under Section 2305, "[t]he local authorities of any institution shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services designed to keep children in their own home, prevent neglect, abuse and exploitation." 62 PA. CONS. STAT. § 2305 This statute also vests the Jefferson County Commissioners with the power and duty to establish the Agency. Therefore, the Court finds that Pennsylvania law treats the Agency as an arm of the county, not an arm of the state—which weighs strongly in favor of finding that the Agency is not entitled to Eleventh-Amendment immunity.

The County Defendants argue that the Agency is part of Pennsylvania's unified judicial system, which "is a Commonwealth governmental entity and protected by the Eleventh Amendment." (ECF No. 26 at 4.) However, the County Defendants do not provide statutory support for this proposition. Tellingly, the statutes on county child-welfare agencies do not indicate that the agencies are associated with or administered by Pennsylvania's unified judicial system. *See* 23 PA. CONS. STAT. § 6303.

The County Defendants instead rely on three opinions that suggest that children and youth services agencies are entitled to Eleventh-Amendment immunity. *See Wattie-Bey v. Atty. Gen. Off.*, 424 F. App'x 95, 98 n.2 (3d Cir. 2011) (noting in a footnote that, despite well-settled precedent on the Eleventh Amendment, the Dauphin County Division of Children and Youth

Services was entitled to Eleventh-Amendment immunity because it was a branch of the state's unitary court system, and thus a branch of state government); *Ciprich v. Luzerne Cty.*, No. 3:15-cv-2364, 2017 WL 3782786, at \*8 (M.D. Pa. Mar. 24, 2017) (citing *Wattie-Bey*, 424 F. App'x at 98 n.2) (equating children and youth services agencies with domestic-relations agencies and holding that the former are entitled to Eleventh-Amendment immunity); *Dortch v. York Cty. Children & Youth*, No. 1:17-cv-1703, 2017 WL 6383074, at \*8 (M.D. Pa. Dec. 6, 2017) (citing *Wattie-Bey*, 424 F. App'x at 98 n.2; *Cirprich*, 2017 WL 3782786, at \*8) (following *Ciprich* and *Wattie-Bey*, without additional analysis, and finding that York County Children and Youth was entitled to Eleventh-Amendment immunity).

The Court is not persuaded by these cases for several reasons. For one, each of these opinions dismissed the cases on other grounds and only briefly discussed the Eleventh Amendment. More importantly, none of these decisions discuss how Pennsylvania's statutes treat county level children and youth services agencies.[13] And most importantly, the courts did not conduct a *Fitchik* analysis or otherwise apply the Third Circuit's Eleventh-Amendment jurisprudence in reaching their decisions. Accordingly, the Court finds that these decisions do not trump the well-settled precedent holding that counties and county agencies, like the Agency here, are not entitled to Eleventh-Amendment immunity.

---

[13] *See Wattie-Bey v. Atty. Gen. Off.*, No. 1:10-cv-2224, 2010 WL 4916710 (M.D. Pa. Nov. 1, 2010) (failing to discuss Pennsylvania's statutory scheme), *report and recommendation adopted*, 2010 WL 4916306 (M.D. Pa. Nov. 24, 2010), *aff'd* 424 F. App'x 95 (3d Cir. 2011); *Dortch v. York Cty. Children & Youth*, 1:17-cv-1703, 2017 WL 6383074, at \*8 (M.D. Pa. Dec. 6, 2017), *report and recommendation adopted*, 2017 WL 6372078 (Dec. 13, 2017) (adopting Magistrate Judge's report and recommendation without discussing Eleventh-Amendment holding); *Ciprich v. Luzerne Cty.*, No. 3:15-cv-2364, 2017 WL 3782786 (M.D. Pa. Mar. 24, 2017), *report and recommendation adopted*, 2017 WL 3709075 (M.D. Pa. Aug. 28, 2017) (same).

-26-

At other points, the County Defendants confuse county children and youth services agencies with domestic-relations agencies.[14] For instance, they cite to *Van Tassel v. Lawrence Cty. Domestic Relations Section*, 659 F. Supp. 2d 672 (W.D. Pa. 2009) and *Walters v. Washington Cty.*, No. 06-1355, 2009 WL 793639 (W.D. Pa. Mar. 23, 2009), where courts found that county domestic-relations agencies are entitled to Eleventh Amendment immunity because they are "agenc[ies] of the court." *Van Tassel*, 659 F. Supp. 2d at 695; *Walters*, 2009 WL 793639, at *13. These decisions, however, discuss only domestic-relations agencies and do not address the status of county children and youth services agencies under Pennsylvania law. Thus, the Court also finds this argument unpersuasive.

Finally, the County Defendants point out that that the Commonwealth of Pennsylvania has expressly withheld its consent to be sued in federal court. (ECF No. 26 at 4 (citing 42 PA. CONS. STAT. § 8521(b)).) However, courts have generally held that the state sovereign-immunity statutes do not apply to civil-rights claims in federal court, and are therefore not relevant to an entity's status under the Eleventh-Amendment. *See Mathias v. York Cty.*, No. 1:16-cv-01338, 2017 WL 770610, at *9 (M.D. Pa. Feb. 28, 2017); *Wade v. City of Pittsburgh*, 765 F.2d 405, 407 (3d Cir. 1985)

---

[14] Counsel for the County Defendants incorrectly claims that "Meredith concedes that Jefferson County Children & Youth Services (i.e. the domestic relations office) is part of the unified judicial system which is a governmental entity and protected by the Eleventh Amendment." (ECF No. 26 at 4.) This statement is untrue for multiple reasons. First, Plaintiff explicitly argued the opposite—she denied that the Agency was an arm of the state in the portion of her brief that the County Defendants cite. Second, by referring to the Agency as "i.e. the domestic relations office," the County Defendants seem to argue that the Agency and the Jefferson County domestic-relations office are the same entity. However, as Plaintiff points out, the Agency (Jefferson County Children & Youth Services) and the County's domestic-relations office are distinct county offices with different addresses, phone numbers, and websites. (ECF No. 31 at 2); *see also* JEFFERSON COUNTY, COUNTY DEPARTMENTS (2016), available at https://www.jeffersoncountypa.com/departments/. This information was obviously available to counsel for the County Defendants.

("This [state] governmental immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act. The Supremacy Clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law."). Thus, the immunity statute does not bear on Pennsylvania law's treatment of the Agency.

In sum, the Court is not persuaded by the County Defendants' arguments on Pennsylvania law's treatment of the Agency. The Court therefore finds that Pennsylvania law treats the Agency as an arm of the county, not an arm of the state—which weighs strongly in favor of finding that the Agency is not immune to suit under the Eleventh Amendment.

Second, it is not clear if the Agency has the power to sue and be sued in its own right. *See, e.g., Jefferson Cty. Children & Youth Servs. v. State Civil Serv. Comm'n*, No. 899 C.D. 2014, 2015 WL 5437177 (Pa. Commw. Ct. May 11, 2015). Generally, it appears that county children and youth services agencies can be sued in their own right. *See, e.g., Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123 (3d Cir. 1997); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486 (3d Cir. 1997). However, some courts have held that as county departments, children and youth services agencies cannot be sued separately from the county itself. *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2014) ("[T]he Court notes that departments of a county, e.g., the Delaware County Department of Children and Youth Services, do not have a separate corporate existence from the county and are therefore not entities capable of being sued."); *Fetterman v. Westmoreland Cty. Children's Bureau*, No. 2:15-cv-773, 2015 WL 5007952, at \*4 (W.D. Pa. Aug. 20, 2015).[15] Regardless, Pennsylvania law specifically provides that counties "shall have the capacity

---

[15] These cases are useful because they discuss the corporate existence of children and youth services organizations generally. However, they have no use in the Eleventh-Amendment inquiry because these cases only deal with whether the parties had sued the proper party—not whether the county or children

-28-

[to] . . . sue and be sued and complain and defend." 16 PA. CONS. STAT. § 202. Therefore, children and youth services agencies can sue and be sued—whether in their own right or as a county department. Accordingly, this factor weighs in favor of finding that the Agency is not an arm of the state.

Third, it appears that the Agency is separately incorporated. However, it is worth noting that the Third Circuit recently referred to this inquiry as "multifaceted" and "hopelessly checkered." *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Ed.*, 800 F.3d 643, 655 (3d Cir. 2018) (quoting *Maliandi*, 845 F.3d at 91).

Under 16 PA. CONS. STAT. § 203, "[t]he corporate power of each county shall be vested in a board of county commissioners." As previously discussed, the Jefferson County Commissioners established the Agency. From this, it appears that the Agency is distinctly incorporated, and is separate from the state. County officials, and not state officials, are responsible for establishing these children and youth services agencies. Other courts have reached the same conclusion. *See Coggins v. Ct. of Common Pleas of Dauphin Cty.*, No. 1:11-cv-136, 2011 WL 662669, at *2 (M.D. Pa. Jan. 25, 2011) (holding that [a] "County Children and Youth Services is part of the County, and does not have a separate corporate existence apart from the county"). Regardless of whether the Agency is part of the County or incorporated in its own right, the Agency's corporate status is independent of the state. Thus, this factor appears to weigh against Eleventh-Amendment immunity.

---

and youth services organization were arms of the state for Eleventh-Amendment purposes. And here, Plaintiff recognizes this distinction. The caption of her Amended Complaint names "County of Jefferson and its agency, Jefferson County Children and Youth Services." (ECF No. 15 at 1.)

Finally, the Agency's tax status is unclear. Courts applying Pennsylvania law rarely make a definitive conclusion on this factor. *See, e.g., Pa. Human Relations Comm'n v. USAir, Inc.*, 615 F. Supp. 75, 78 (W.D. Pa. 1985) ("There is no indication that agency property is immune from state taxation."). While 72 PA. CONS. STAT. § 203 provides that "[a]ll public property used for public purposes . . . shall be exempt from all county, city, and school tax," it is not clear that this provision applies to the Agency. Thus, it is not clear if this factor weighs in favor of Eleventh-Amendment immunity.

In conclusion, balancing of these four subfactors indicates that the Agency is not an arm of the state, and therefore that its status under Pennsylvania law weighs strongly against Eleventh-Amendment immunity.

### c. The Agency's Degree of Autonomy

The third factor of the *Fitchik* inquiry looks to "the entity's governing structure and the oversight and control exerted by a state's governor and legislature." *Maliandi*, 845 F.3d at 96; *Febres*, 445 F.3d at 231-22; *Fitchik*, 873 F.3d at 663-64; *Patterson*, 915 F.3d at 955. Oversight or control of the entity by the governor or state legislature weighs in favor of the entity's Eleventh-Amendment immunity. *Id.*

Here, the Pennsylvania Governor and General Assembly (Pennsylvania's legislature) exercise little oversight and control over the Agency. Pennsylvania law requires counties to establish child-welfare agencies and ensure the welfare of children. 23 PA. CONS. STAT. § 6361. While Pennsylvania law also sets out the general goals and responsibilities of county child-welfare agencies, the statutory scheme leaves significant control over their organization and functioning to the individual counties. *See* 23 PA. CONS. STAT. §§ 6362-6378. County agencies are

required to submit reports to the Governor and General Assembly. *See* 23 PA. CONS. STAT. §§ 6334-38, 6345-47. However, the Governor and General Assembly do not control the personnel that counties select to lead their child-welfare agencies. *See Patterson*, 915 F.3d at 955 (noting that Pennsylvania has substantial control over how the Pennsylvania Liquor Control Board operates and defines the membership of the board). Similarly, Pennsylvania's Governor does not have the power to appoint officials to the Agency or to veto the Agency's decisions. *Febres*, 445 F.3d at 231 (noting that the governor's control over entity through veto and appointment power weighed in favor of immunity). Therefore, the Agency is "highly autonomous," which weighs strongly against Eleventh-Amendment immunity. *See Fitchik*, 873 F.2d at 663.

As previously discussed, Pennsylvania law gives county commissioners the power to establish and oversee children and youth services programs. 62 PA. CONS. STAT. § 2305. It appears that Pennsylvania law gives the state very little power over counties. *See generally* County Code, 16 PA. CONS. STAT. §§ 101-13213. Generally, the Pennsylvania Governor can appoint county officials in certain specific circumstances. *See, e.g.,* 16 PA. CONS. STAT. §§ 409, 3409, 7404, 7356. And certain county agencies are required to file annual reports with the Governor and General Assembly. *See, e.g.,* 16 PA. CONS. STAT. §§ 3000.3034, 6155-B; 3000.3057. Otherwise, though, the Commonwealth seems to afford its counties considerable autonomy. Accordingly, the autonomy inquiry weighs against the Agency's Eleventh-Amendment immunity.

### d. The Weight of the *Fitchik* Factors Indicates that the Agency is not Entitled to Eleventh-Amendment Immunity

In conclusion, the Court finds that the Agency is not entitled to Eleventh-Amendment immunity. As an initial matter, the Court is persuaded by a long line of Supreme Court precedent

holding that county entities, like the Agency, are not immune to suit under the Eleventh Amendment. Further, the three *Fitchik* factors weigh in favor of Eleventh-Amendment immunity. First, it does not appear that the Commonwealth is legally responsible for a judgment against the Agency. Second, Pennsylvania law treats the Agency as an arm of Jefferson County, not an arm of the state. And third, the Agency is autonomous because its operations are controlled by Jefferson County and it is not accountable to Pennsylvania's legislature or governor. Therefore, the Eleventh Amendment does not bar Plaintiff's suit against the Agency.

### 3.    Defendants are not Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has explained that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. "Because qualified immunity bestows immunity from suit, the Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Conte v. Rios*, 658 F. App'x 639, 642 (3d Cir. 2016).

"To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether

the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (citing *Pearson*, 555 U.S. at 232).[16]

The Supreme Court has recently held "that clearly established law should not be established at a high level of generality," but instead must "be particularized to the facts of the case." *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2018)).

### a. Plaintiff Alleges that Defendants Violated Her Constitutional Rights

Plaintiff clearly alleges that Defendants violated her constitutional rights. Specifically, Plaintiff alleges that Defendants: (1) violated her right to equal protection under the Fourteenth Amendment (ECF No. 15 ¶¶ 213-31); (2) violated her right to procedural due process under the Fourteenth Amendment (*id.* ¶¶ 232-53); (3) violated her First-Amendment rights (*id.* ¶¶ 254-62); and (4) violated her right substantive due process under the Fourteenth Amendment (*id.* ¶¶ 263-74). Therefore, there is no question that Plaintiff sufficiently alleges the violation of her constitutional rights. The Court addresses each of these alleged constitutional violations more thoroughly in Section V(B) and concludes that Plaintiff plausibly alleges violations of equal protection, procedural due process, and the First Amendment.

Additionally, in her response to the County Defendants' Motion to Dismiss, Plaintiff more specifically argues that the County Defendants violated her rights by: (1) subjecting her to a retaliatory prosecution in violation of the First Amendment (ECF No. 24 at 43); (2) fabricating

---

[16] As the Supreme Court has repeatedly explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).

evidence that disfavored Plaintiff (*id.*); (3) selectively enforcing a facially neutral law against Plaintiff for improper and arbitrary reasons (*id.* at 44); and (4) subjecting Plaintiff, who was a tenured professional, to proceedings where her continued employment was at stake without providing Plaintiff with notice of the charges against her or a meaningful opportunity to be heard. (*Id.*)

In response, the County Defendants argue that the County Defendants are entitled to qualified immunity because they investigated the allegations against Plaintiff and relied on Dr. Ryen's opinion when dealing with Plaintiff's case.[17] (ECF No. 18 at 45-47.) Then, in their reply brief, the County Defendants argue that Plaintiff does not assert constitutional claims, despite the four claims in Plaintiff's Amended Complaint that are straightforwardly labeled as § 1983 claims for violations of specific constitutional provisions. (ECF No. 26 at 19.)

### b. The Constitutional Rights that Defendants Allegedly Violated Were Well-Established at the Time of their Conduct

The rights that Defendants allegedly violated were well-established at the time of their conduct. First, Plaintiff alleges that Defendants violated her First-Amendment rights by subjecting her to a retaliatory prosecution. (*Id.* at 43; ECF No. 15 ¶¶ 257-62.) Plaintiff alleges that Defendants sought an indicated finding of abuse against Plaintiff because she spoke out against Jeff Tech at the school-board meeting in August of 2016. (ECF No. 15 ¶¶ 257-62.) It is well-settled that retaliatory prosecutions violate the First Amendment. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal

---

[17] Dr. Ryen does not raise a qualified-immunity defense.

prosecutions, for speaking out."). Thus, on this basis alone, the Court finds that Defendants are not entitled to qualified immunity. But the Court will nonetheless analyze the other rights that Defendants allegedly violated.

Second, Plaintiff alleges that Defendants violated her constitutional rights by fabricating inculpatory evidence against her. (ECF No. 24 at 43; ECF No. 15 ¶ 224.) The Third Circuit recently considered whether a government official's fabrication of evidence is a violation of a well-established constitutional right. *Halsey v. Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014). In *Halsey*, the Third Circuit held that fabricated evidence in criminal prosecutions violates the due-process clause of the Fourteenth Amendment.[18] *Id. Halsey* has repeatedly been applied in the criminal context, but has not been applied where a government official fabricated evidence in a civil or administrative proceeding. However, the Third Circuit's holding appears sufficiently clear to put government officials on notice that fabricating evidence will deprive a person of their due-process rights under the Fourteenth Amendment.

Third, Plaintiff alleges that Defendants violated her constitutional rights by selectively enforcing a facially neutral law against her. (ECF No. 24 at 44; ECF No. 15 ¶¶ 221-24.) "Selective discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment." *Jewish Home of E. Pa. v. Centers for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886); *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)); *see also Davila v. N. Regional Joint Police Bd.*,

---

[18] The Court recognizes that Plaintiff was not charged criminally. However, as discussed more thoroughly in Section IV(B), an indicated finding of child abuse has significant professional and reputational repercussions for a public employee like Plaintiff. The Court finds that the Agency's findings on the child-abuse allegation against Plaintiff are a serious administrative determination akin to a criminal proceeding. Accordingly, the same prohibition on fabricated evidence should apply in both contexts.

No. 2:13-cv-70, 2014 WL 3635631, at *3 (W.D. Pa. July 28, 2014) (holding that an officer violated the plaintiff's "clearly established equal protection right to be free from selective enforcement of the law). Accordingly, Plaintiff sufficiently alleges that Defendants violated her well-established right to be free from selective enforcement of facially neutral laws.

Finally, it is well-established that tenured employees like Meredith have a constitutional right to notice of charges against them and a meaningful opportunity to be heard where their continued employment is at stake. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 543, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *McDaniels v. Flick*, 59 F.3d 446, 454 (3d Cir. 1995).

In conclusion, Defendants are not entitled to qualified immunity. Plaintiff alleges constitutional violations and specifically alleges that Defendants violated several of her well-established rights.

**B.    The Court will Deny Defendants' Motions to Dismiss Under Rule 12(b)(6)**

**1.    Count I – Plaintiff Plausibly Alleges a Violation of the Equal Protection Clause**

In Count I of her Amended Complaint, Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 15 ¶¶ 213-31.) Specifically, Plaintiff claims that Defendants violated the Equal Protection Clause by (1) placing Plaintiff in a "class of one" by failing to investigate the allegations against Plaintiff and advancing a private agenda to return an indicated finding of child abuse against her, and (2) selectively enforcing child-abuse laws to retaliate against Plaintiff for speaking at the August 2016 school-board meeting.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. Plaintiff brings her Equal Protection clause claim under two separate theories—a "class-of-one" theory and a "selective-enforcement" theory. (*See* ECF No. 15 ¶¶ 213-31.) Plaintiff plausibly pleads violations of the Equal Protection Clause under both class-of-one and selective-enforcement theories. The Court will address each theory in turn.

First, "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Comm. of Webster Cty.*, 488 U.S. 336 (1989)).

Plaintiff straightforwardly alleges that she was treated differently than other similarly situated individuals—namely public employees accused of child abuse in Jefferson County. Plaintiff alleges that Jeff Tech employees had a vendetta against Plaintiff because she spoke at the August 2016 school-board meeting. (ECF No. 15 ¶¶ 92-96, 217-18.) Plaintiff alleges that "there was a relationship between Jeff Tech and the Agency that caused the Agency to treat the September [child abuse] report [against Plaintiff] differently." (*Id.* ¶ 92.) Plaintiff alleges Jeff Tech and the Agency had the same attorneys, which "incentivized the Defendants to give force to Jeff Tech's retaliatory animus . . . [and] aim to retaliate against Meredith by making an indicated finding against her." (*Id.* ¶ 96.)

Plaintiff's Amended Complaint also contains several detailed allegations that Agency employees conducted their evaluation with the purpose of returning an indicated finding of child

abuse against Plaintiff. (*Id.* ¶¶ 97-100, 104-06, 124-30, 133-35, 141-48, 162-66, 217-19.) Plaintiff alleges that Agency employees ignored exculpatory evidence, fabricated inculpatory evidence, and retained Dr. Ryen to provide testimony supporting an indicated finding of child abuse. (*Id.*) Therefore, Plaintiff pleads a plausible Equal-Protection claim under a class-of-one theory.

Second, Plaintiff pleads a plausible Equal-Protection claim under a selective-enforcement theory. "To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard such as race or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005); *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)).

As previously discussed, Plaintiff fulfils the first element under the selective-enforcement theory. She thoroughly alleges that she was treated differently than other individuals accused of child abuse because the Agency failed to adequately investigate the allegations against her and acted with the purpose of returning an indicated finding against her.

Plaintiff fulfills the second element because she alleges that she was treated differently because the Agency wanted to prevent the exercise of her First Amendment rights. Plaintiff alleges that the Agency sought to obtain an indicated finding of abuse against her "to further the interests of Jeff Tech, which sought to punish Meredith for engaging in protected activity" by speaking at the August 2016 school-board meeting. (ECF No. 15 ¶¶ 217-18.) When drawing all inferences in favor of Plaintiff, the Court must infer that the Agency returned an indicated finding against Plaintiff to punish her for protected activity and prevent future exercise of her First-

Amendment rights. Therefore, Plaintiff plausibly alleges that Defendants violated the Equal Protection Clause under a selective-enforcement theory.

Both the County Defendants and Dr. Ryen argue that Plaintiff fails to plausibly allege that Defendants violated the Equal Protection Clause because the ALJ did not find that Defendants purposefully discriminated against Plaintiff.[19] (ECF No. 18 at 37; ECF No. 21 at 8.) This argument is not persuasive. For one, this Court is not bound by the ALJ's factual findings. But more importantly, the ALJ was not tasked with determining whether Defendants discriminated against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment. The only question before the ALJ was whether the Agency could produce adequate evidence to support its finding that Plaintiff violated Pennsylvania's child-abuse laws. (ECF No. 15-1 at 8.) Accordingly, the Court will **DENY** Defendants' Motions to Dismiss with respect to Plaintiff's claims under the Fourteenth Amendment's Equal Protection Clause.

### 2. Count II—Plaintiff Plausibly Alleges a Violation of her Right to Procedural Due Process

In Count II of her Amended Complaint, Plaintiff alleges that Defendants violated her Fourteenth Amendment right to procedural due process by failing to notify her of the charges

---

[19] Both the County Defendants and Dr. Ryen argue that Plaintiff does not sufficiently allege facts showing that Defendants violated the Equal Protection Clause. However, as this section indicates, Plaintiff's Amended Complaint is rife with detailed factual allegations that Defendants intentionally discriminated against Plaintiff after Plaintiff spoke at the August 2016 school-board meeting. (ECF No. 18 at 37; ECF No. 21 at 8.) And in their reply brief, the County Defendants seem to argue that Plaintiff's Equal Protection Clause claim fails because M.S. complained about Plaintiff to school security guards, therefore substantiating M.S.'s allegations against Plaintiff. (ECF No. 26 at 14.) The County Defendants also argue that "[t]he fact that there is an administrative process regardless of the intent or findings of the underlying Agency, insulates it them [sic] from any type of civil rights or legal actions regardless of the intent or behavior of the investigators." (Id. at 15.) Because these arguments are devoid of reasoning, factual support, and citation to legal authority, the Court will not fully analyze them.

against her and by failing to provide a meaningful opportunity to be heard. (ECF No. ¶¶ 232-53.) Plaintiff specifically alleges that the child-abuse allegation against her implicated her property interest in her tenured public-sector employment and her reputational interest. (*Id.* ¶¶ 234-36.) Plaintiff alleges that Defendants "never provided the details of the charges against her," "convicted Meredith of abuse in the absence of her having any opportunity whatsoever to rebut that charge," and failed to adequately gather evidence. (*Id.* ¶¶ 238, 246, 248.) Plaintiff details the roles that Defendants Welch, Dr. Ryen, Shreckengost, Cornwall, and Young played in the Agency's allegedly defective determination that Plaintiff committed child abuse. (*Id.* ¶¶ 241-47.)

### a. Plaintiff Had a Property Interest in her Tenured Public Employment and her Reputation

"The [F]ourteenth [A]mendment prohibits state deprivations of life, liberty, or property without due process of law."[20] *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984). As the Third Circuit has repeatedly noted, "the core of procedural due process jurisprudence is the right to advance notice . . . and to a meaningful opportunity to be heard." *Mir v. Behnke*, 680 F. App'x 126, 129-30 (3d Cir. 2017) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). The Third Circuit has explained that "[i]t is elementary that procedural due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest." *Abbott*, 164 F.3d at 146 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

---

[20] The Supreme Court has held that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homari*, 520 U.S. 924, 930 (1997) (citing *Cafeteria and Rest. Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

The Supreme Court has held that tenured "public employees who can only be discharged

for cause have a constitutionally protected property interest in their tenure and cannot be fired

without due process." *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) (citing *Roth*, 408 U.S. at 578;

*Perry v. Sindermann*, 408 U.S. 593, 602-03 (1972)).

Here, Plaintiff alleges that she was a tenured math and algebra teacher at Jeff Tech—a

public school. (ECF No. 15 ¶ 10.) Therefore, Plaintiff has plausibly alleged that she was entitled

to due process before she was deprived of her constitutionally protected privacy interest in her

continued employment as a tenured teacher.

### b.     The *Matthews* Factors Indicate that Defendants Deprived Plaintiff of Due Process

In the Third Circuit, courts evaluating a procedural due process challenge apply the

*Mathews v. Eldridge* factors and weigh "(1) the private interests at stake, (2) the governmental

interests at stake, and (3) the fairness and reliability of the existing procedures and the probable

value, if any, of additional procedural safeguards." *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir.

1989) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

As previously stated, it is well-established that an individual with a constitutionally

protected property interest must be afforded advance notice and the opportunity to be heard.

*Mir*, 680 F. App'x at 129-30. Courts have elaborated on this general rule in the public-employment

context. "[A] public employee dismissible only for cause [is] entitled to a very limited hearing

prior to . . . termination." *Gilbert*, 520 U.S. at 929 (citing *Loudermill*, 470 U.S. at 545-46). The

"pretermination process need only include oral or written notice of the charges, an explanation

of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Id.* (citing *Loudermill*, 470 U.S. at 546)).

Based on this fundamental caselaw, Plaintiff clearly alleges a plausible violation of procedural due process in her Amended Complaint. Plaintiff alleges that she was not provided with notice of the specific charges against her before the "hearing" that the Agency held. (ECF No. 15 ¶¶ 183, 236-39.) On September 17, 2018, the Agency sent Plaintiff a letter that vaguely stated that Plaintiff was accused of child abuse. (*Id.* ¶ 176.) However, Plaintiff was never provided with more specific information about the nature of the charges against her despite her requests for more information. (*Id.* ¶¶ 179-81.) Notably, Plaintiff alleges that at the Agency's hearing, Shreckengost told Plaintiff that Agency policy did not allow Plaintiff to be informed of the charges against her. (*Id.* ¶ 183, 238-40, 249.) Thus, Plaintiff alleges that the Agency failed to provide her with sufficient advance notice of the charges of against her.

Plaintiff also alleges that Defendants failed to notify Plaintiff of the evidence underlying the abuse allegation against her. (*Id.* ¶¶ 178-80, 184, 236, 238-40, 244, 248.) And finally, Plaintiff alleges that she did not have an adequate opportunity to tell her side of the story at the hearing in front of the Agency. (*Id.* ¶¶ 236, 249.) Therefore, Plaintiff pleads a plausible procedural due process violation on these bases. The Court will nonetheless analyze the *Mathews v. Eldridge* factors.

First, the Court finds that the private interests at stake here—Plaintiff's continued public employment as a teacher and her reputation—are significant. As Plaintiff points out, an indicated finding of child abuse against Plaintiff would cause her to lose her job at Jeff Tech and likely preclude her from future employment as a teacher. *See Mosley v. City of Pittsburgh Pub. Sch. Dist.,*

702 F. Supp. 2d 561, 576 (W.D. Pa. 2010) (citing *Gilbert*, 520 U.S. at 932; *Loudermill*, 470 U.S. at 543) (finding that "the private interest in . . . continued employment is significant").

Second, the governmental interests at issue are also significant. Pennsylvania law indicates that the state has an interest in ensuring the safety of children. The Pennsylvania General Assembly tasked county agencies with investigating reports of child abuse and providing protective services "to safeguard and ensure the well-being and development of the child[ren]." 23 PA. CONS. STAT. § 6362(a). Moreover, there is an obvious governmental and public interest in ensuring that students in public schools are not abused.

Third, the Court finds that the procedures that the Agency employed to handle Plaintiff's case were unfair and unreliable, and that additional procedural safeguards are necessary. Plaintiff alleges several critical deficiencies in the Agency's process. She alleges that the Agency never provided Plaintiff with any details about the charges against her. (*See, e.g.*, ECF No. 15 ¶¶ 179-80, 236, 238.) She alleges that the Agency never provided her with a description of the evidence underlying the charges against her. (*See, e.g., id.* ¶¶ 184, 240.) She further alleges that the Agency did not seek out readily available exculpatory evidence. (*See, e.g., id.* ¶¶ 245-47.) Finally, she alleges that she did not have a meaningful opportunity to tell her side of the story in front of the Agency. (*See, e.g., id.* ¶¶ 181, 236-37.) And with respect to Dr. Ryen, Plaintiff alleges that Dr. Ryen failed to consider relevant evidence and that his evaluation was undertaken for the purpose of making an indicated finding of abuse against her. (*See, e.g., id.* ¶¶ 140-161, 241, 243.)

Therefore, the Court finds that the *Matthews v. Eldridge* factors indicate that the Agency's process for adjudicating Plaintiff's claims was inadequate. While the interests of both Plaintiff and the government are significant, Plaintiff plausibly alleges that the Agency's process was

unfair and unreliable. The Agency allegedly deprived her of the crucial components of procedural due process—"oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Gilbert*, 520 U.S. at 929 (citing *Loudermill*, 470 U.S. at 546)). Based on Plaintiff's allegations, the Agency must implement additional procedural safeguards to ensure a fair decision-making process.

Both the County Defendants and Dr. Ryen argue that Plaintiff's procedural due process claim fails because the ALJ did not find that the Agency's process was constitutionally flawed. (ECF No. 18 at 26-27; ECF No. 21 at 24.) As previously discussed, however, this Court is not bound by the ALJ's factual findings. And more importantly, this argument is problematic because the ALJ was not tasked with determining whether Defendants discriminated against Plaintiff in violation of the procedural due process guarantees of the Fourteenth Amendment. The only question before the ALJ was whether the Agency could produce adequate evidence to support its finding that Plaintiff violated Pennsylvania's child-abuse laws. (ECF No. 15-1 at 8.) Therefore, this argument is not persuasive.

The County Defendants also argue that the Agency followed statutory provisions dealing with investigations of child-abuse allegations. (ECF No. 18 at 30; ECF No. 26 at 8-9.) They argue that "Meredith was afforded the appropriate information under the statutory provisions of 23 Pa.C.S. § 6368(h)" and that "the Agency did not have [a statutory duty] to provide her with any information whatsoever." (*Id.*) This argument is unpersuasive for multiple reasons. First, 23 PA. CONS. STAT. § 6368(h) does not prescribe a procedure for the Agency to follow in investigating and adjudicating child-abuse allegations. It merely requires that the Agency inform the reporter of child abuse—in this case Jeff Tech's principal—on whether the reported allegations are

founded or unfounded. *Id.* This statute does not address the rights of the accused or the information to which the accused is entitled. *Id.* Second, Plaintiff's procedural due process claim deals with Plaintiff's constitutional rights. Pennsylvania statutes are not relevant to this inquiry.

In conclusion, Plaintiff's Amended Complaint plausibly alleges a claim for a violation of procedural due process. Accordingly, the Court will **DENY** Defendants' Motions to Dismiss with respect to Count II of Plaintiff's Amended Complaint.

### 3. Count III—Plaintiff Plausibly Alleges that Defendants Retaliated Against Her In Violation of the First Amendment

To plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *See, e.g., Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Borrero v. Horton*, No. 12-113J, 2013 WL 4535917, at *5 (W.D. Pa. Aug. 27, 2013) (Gibson, J.).

"[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)); *Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the constitution is that it threatens to inhibit exercise of the protected right.").

### a. Plaintiff Alleges that She Engaged in Protected Conduct by Speaking at the School-Board Meeting and Suing M.S.

The First Amendment protects a public employee's speech on matters of "public concern." *Connick v. Myers*, 461 U.S. 138, 143 (1983). "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Baldassare v. N.J.*, 250 F.3d 188, 194-95 (3d Cir. 2001). A public employee's speech is also protected when it "is a subject of legitimate news interest." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

"The arguably inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015). The question of whether a public employee's speech falls within the First Amendment's protection is a question of law. *Middleton v. Deblasis*, 844 F. Supp. 2d 556, 563 (E.D. Pa. 2011) (citing *Azzaro v. Allegheny Cty.*, 110 F.3d 968, 975 (3d Cir. 1997)).

Plaintiff alleges that she engaged in protected activity by speaking at the August 2016 school-board meeting. Plaintiff complained to the Punxsutawney School Board about ongoing issues at Jeff Tech—namely that Jeff Tech administrators failed to address bullying or adequately care for its special-needs students. (ECF No. 15 ¶¶ 42-43.) The issues that Plaintiff raised were clearly matters of public concern. Conditions in a public school are predominant political and social concerns in our communities. *See Dougherty v. Sch. Dist. of Phila.*, 77 F.3d 979, 987 (3d Cir. 2015) (holding that a school district official's public disclosure of misconduct within the school district was protected speech). Moreover, the local newspaper's detailed coverage of Plaintiff's

speech indicates that her speech related to matters of public concern. (ECF No. 15 ¶ 44); *Snyder*, 562 U.S. at 453.

Furthermore, Plaintiff alleges that she engaged in protected activity by suing M.S. for defamation. (ECF No. 15 ¶¶ 46, 255.) Courts have held that private lawsuits involve matters of public concern, and are thus protected speech for First-Amendment purposes, when the implications of those lawsuits have some broader effect on members of the public. *Holt v. Pennsylvania*, No. 10-5510, 2013 WL 5565612, at *4 (E.D. Pa. Oct. 8, 2013) (citing *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2005)). Construing the allegations in Plaintiff's favor, the Court must infer that Plaintiff's defamation lawsuit against M.S. was a matter of public concern because it arose from a private individual's attempt to damage the reputation and career prospects of a public employee.

Accordingly, Plaintiff plausibly alleges that she engaged in protected activity by speaking at the August 2016 school-board meeting and by filing a defamation lawsuit against M.S.

> **b.** **Plaintiff Alleges that Defendants' Retaliatory Action was Sufficient to Deter a Person of Ordinary Firmness From Exercising His or Her Constitutional Rights**

"[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee*, 436 F.3d at 170. A retaliatory action "need not be great in order to be actionable" but must be more than *de minimis*. *Id.* (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *Brennan*, 350 F.3d at 422 n.17).

Generally, courts have held that an employer's action must rise above the level of criticism, false accusations, or verbal reprimands to deter a person of ordinary firmness from exercising

constitutional rights. *Id.*; *Brennan*, 350 F.3d at 419 (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

Here, Plaintiff alleges that Defendants' retaliation against her was much more than criticism, false accusations, or verbal reprimands. Plaintiff alleges that Defendants, acting in concert with Jeff Tech officials, retaliated against her by returning an unsupported indicated finding of child abuse against Plaintiff. Plaintiff alleges that Defendants knew that an indicated finding of child abuse was likely to cause Plaintiff's termination as a teacher at Jeff Tech and damage her reputation. (ECF No. 15 ¶¶ 257-61.) Defendants' conduct could deter other similarly situated individuals from exercising their First Amendment rights because those individuals may fear that the Agency would work closely with Jeff Tech (or other county) officials to return an indicated finding of child abuse.

### c.    Plaintiff Alleges a Causal Link Between her Protected Speech and the Defendants' Retaliatory Actions

Plaintiff plausibly alleges a causal link between her protected speech and Defendants' retaliating against her by returning an indicated finding of child abuse. Plaintiff alleges that "Defendants only superficially went through the motions of an ostensible investigation, because they intended, at all times, to subject Meredith to an indicated finding of abuse." (*Id.* ¶ 260.) And Plaintiff straightforwardly alleges causation—she states that Defendants returned an indicated finding of child abuse "because they intended to punish Meredith for engaging in protected activity" and that "Defendants acted to retaliate against Meredith because she engaged in protected activity." (*Id.* ¶¶ 257, 261.) The word "because" in those allegations indicates causation.

-48-

Moreover, Plaintiff sufficiently pleads causation because she alleges that both Dr. Ryen and Agency officials considered her protected activity when making their decisions. (*Id.* ¶¶ 62, 128-29.) "Because it is generally impermissible for a state actor to hinge an adverse decision on [a protected] activity, any consideration of the activity . . . is, in the normal course, sufficient to satisfy the causation element of a prima facie retaliation . . . case." *Oliver v. Roquet*, 858 F.3d 180, 191 (3d Cir. 2017) (citing *Mt. Healthy*, 429 U.S. at 282-87; *Pryor v. NCAA*, 288 F.3d 548, 560-61 (3d Cir. 2002)).

Similarly, Plaintiff shows causation by alleging "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" and "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex. Rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper*, 109 F.3d 913, 920-21 (3d Cir. 1997)). Here, Plaintiff alleges a close temporal proximity between her appearance at the August 2016 school board meeting and the Agency's finding that Plaintiff committed child abuse in November of 2016. (ECF No. 15 ¶¶ 14, 24.) And Plaintiff alleges throughout her Amended Complaint that Defendants exhibited a pattern of antagonism. Finally, the Court must infer causation because the allegations in Plaintiff's Amended Complaint, as a whole, suggest that Defendants engaged in a coordinated effort to retaliate against Plaintiff for engaging in protected activities. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

In conclusion, the Court finds that Plaintiff has plausibly asserted a First Amendment retaliation claim. Accordingly, the Court will **DENY** Defendants' Motions to Dismiss with respect to Count III.

### 4. Count IV—Plaintiff Does Not Plausibly Allege that Defendants Violated her Fourteenth Amendment Right to Substantive Due Process

Count IV of Plaintiff's Amended Complaint alleges that Defendants violated Plaintiff's right to substantive due process by conducting a bad-faith investigation to further the illicit motives of M.S. and Jeff Tech officials. (ECF No. 15 ¶¶ 263-74.) Plaintiff alleges that Defendants ignored exculpatory evidence and fabricated evidence (*id.* ¶ 266), disregarded the history between M.S. and Defendant (*id.* ¶ 267), engaged in an arbitrary and capricious selective prosecution (*id.* ¶ 270), and relied on Dr. Ryen's facially deficient evaluation of A.C. (*Id.* ¶¶ 273-74.)

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. "While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846–47 (1992)).

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs." *Simms v. Pa. State Univ.-Altoona*, No. 17-cv-201, 2018 WL 1413098, at *8 (W.D. Pa. Mar. 20, 2018) (Gibson, J.); *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000)). Substantive due process achieves this goal by "guarantee[ing] protect[ion] against government power arbitrarily and oppressively exercised." *Id.*

"In contrast to procedural due process rights, which may be derived from state law, '[s]ubstantive due process rights are founded not upon state law but upon deeply rooted notions

of fundamental personal interests derived from the Constitution.'" *Steele*, 55 F.3d at 501 (quoting *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009)). Accordingly, "[s]ubstantive due process is a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties." *Armbruster v. Cavanaugh*, 410 F. App'x 564, 567 (3d Cir. 2011).

The Third Circuit recognizes "two threads" of substantive due process claims. *See Nicholas*, 227 F.3d at 139; *Koorn v. Lacey Twp.*, 78 F. App'x 199, 202 (3d Cir. 2003). "The first thread . . . applies when a plaintiff challenges the validity of a legislative act." *Nicholas*, 227 F.3d at 139. "The second thread . . . protects against certain types of non-legislative state action." *Id.* Here, Plaintiff challenges non-legislative state action, namely the actions of the Agency and Dr. Ryen.

"To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Nicholas*, 227 F.3d at 139–40 (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). The Third Circuit has stated that "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Nicholas*, 227 F.3d at 140 (citing *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)). Instead, "to state a substantive due process claim, 'a plaintiff must have been deprived of a *particular quality* of property interest.'" *Nicholas*, 227 F.3d at 139–40 (emphasis in original) (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)).

The Third Circuit has "limited non-legislative substantive due process review to cases involving real property ownership." *Nicholas*, 227 F.3d at 141; *Wrench Transportation Sys., Inc. v. Bradley*, 340 F. App'x 812, 816 (3d Cir. 2009) (reaffirming principle articulated in *Nicholas* that substantive due process protection only extends to real property ownership); *see also Marin v.*

*McClincy*, 15 F. Supp. 3d 602, 614 (W.D. Pa. 2014) (holding that "non-legislative substantive due process review is limited to cases involving a quality of interest analogous to real property ownership.") (internal citations omitted).

The Third Circuit has addressed the question of whether "tenured public employment is a fundamental property interest entitled to due process protection" in a case involving a tenured public university professor.[21] *Nicholas*, 227 F.3d at 142. There, the Third Circuit held that "public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)). The Third Circuit noted that "the federal judiciary should not become a general court of review for state employment decisions." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 359-60 (2000)).

Here, Plaintiff asserts that she has a fundamental property right to her tenured public employment. However, as the Third Circuit made clear in *Nicholas*, this right is not a "fundamental property interest" for purposes of the substantive component of the Due Process Clause. Therefore, Plaintiff is unable to plausibly assert a substantive due process claim. The

---

[21] The Third Circuit thoroughly explained its reasoning on this point, stating that:

> we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

*Nicholas*, 227 F.3d at 142.

Court will adjudicate the alleged procedural deficiencies of the Agency's process in connection with Count II for a violation of procedural due process.

Accordingly, the Court will dismiss Count IV of Plaintiff's Amended Complaint. Because Plaintiff cannot amend this count to assert a fundamental property right for purposes of substantive due process, the Court will not grant leave to amend this count.

### 5. Count V—Plaintiff Plausibly Asserts a Negligence Claim Against Dr. Ryen

Count V of Plaintiff's Amended Complaint alleges that Dr. Ryen negligently evaluated A.C. in violation of established psychological principles.[22] (ECF No. 15 ¶¶ 275-99.) Plaintiff alleges that Dr. Ryen "had a duty . . . to perform the forensic examination [of A.C.] to the degree of knowledge, care, and skill ordinarily possessed and exercised in similar matters by practitioners in the field." (*Id.* ¶¶ 278-78.) Plaintiff alleges that Dr. Ryen breached that duty when he failed to follow the well-accepted practice of gathering data from multiple sources when conducting an evaluation in the child protective services context. (*Id.* ¶¶ 282-83.) Rather, Plaintiff alleges that Dr. Ryen relied solely on his interview with A.C. when he concluded that Plaintiff committed "emotional abuse." (*Id.* ¶ 287.)

---

[22] To prevail on a negligence claim under Pennsylvania law, a plaintiff must establish four elements: (1) a duty or obligation recognized by the law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of the duty or failure to conform to the standard by the defendant; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage resulting to the plaintiff. *Catlin v. Hamburg*, 56 A.3d 914, 920 (Pa. Super. Ct. 2012) (quoting *Freed v. Geisinger Med. Ctr.*, 910 A.2d 68, 72-73 (Pa. Super. Ct. 2006)); *Wright v. Eastman*, 63 A.3d 281, 284 (Pa. Super. Ct. 2013); *Trask v. Olin Corp.*, 298 F.R.D. 244, 264 (W.D. Pa. 2014); *Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund*, 73 A.3d 543, 563 n.17 (Pa. 2013). Where a negligence claim involves a licensed professional, like Dr. Ryen, Plaintiff must establish that Dr. Ryen deviated from the standard of care that a similarly licensed and trained professional would utilize. *See, e.g., Gondek v. Bio-Med. Applications of Pa., Inc.*, 919 A.2d 283, 287 (Pa. Super. 2007); *UPMC v. CBIZ, Inc.*, No. 16-cv-204, 2017 WL 4357984, at *10 (W.D. Pa. Sept. 29, 2017) (Gibson, J.).

In his Motion to Dismiss, Dr. Ryen argues that Plaintiff's state-law negligence claim against him should be dismissed. Dr. Ryen argues that "because [Dr. Ryen] respectfully submits that Plaintiff's federal claims should be dismissed as a matter of law (Counts I, II, III, and IV), it also submits Plaintiff's state-law negligence claim should be dismissed and supplemental jurisdiction should not be exercised." (ECF No. 21 at 27.)

Dr. Ryen's argument is unpersuasive because the Court did not dismiss Counts I, II, or III. (*See supra* Section V(B)(1)-(4).) And as Plaintiff points out, the Court could exercise supplemental jurisdiction over Plaintiff's state-law claim even if the Court dismissed each of Plaintiff's federal law claims.[23] *See, e.g., Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.").

Accordingly, the Court will **DENY** Dr. Ryen's Motion to Dismiss with respect to Count V for negligence.

## VI.    Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 17, 21) are **GRANTED IN PART** and **DENIED IN PART.** The Court will dismiss (1) Count IV for a violation

---

[23] The Court has significant discretion on whether to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim if—(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Nonetheless, Dr. Ryen's supplemental-jurisdiction argument clearly fails because the Court did not dismiss the other four counts in Plaintiff's Amended Complaint.

of substantive due process against all Defendants, and (2) Plaintiff's official-capacity claims against Defendants Cornwell, Welch, Shreckengost, and Young because those claims are duplicative of Plaintiff's claims against the Agency. Defendants' Motions are denied in all other respects.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY MEREDITH, | ) | Case No. 3:18-cv-105 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF JEFFERSON; JEFFERSON | ) | |
| COUNTY CHILDREN AND YOUTH | ) | |
| SERVICES; CYNTHIA CORNWELL; | ) | |
| JOANNA WELCH; BRANDY | ) | |
| SHRECKENGOST; ALLEN H. RYEN, | ) | |
| Ph.D.; NATALIE YOUNG; | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this __1st__ day of April, 2019, upon consideration of Defendants' Motions

to Dismiss (ECF Nos. 17, 21), **IT IS HEREBY ORDERED** that the Motions are **GRANTED IN**

**PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that (1) Count IV for a violation of substantive due process

is dismissed as to all Defendants, and (2) Plaintiff's official-capacity claims against Defendants

Cornwell, Welch, Shreckengost, and Young are hereby dismissed. Defendants' Motions are

denied in all other respects.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE